**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CLEVELAND GARNER, # N-33258** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-900-SMY** |
| | ) | |
| **VIPIN K. SHAH,** | ) | |
| **GINA ALLEN,** | ) | |
| **HARDY MARCOUS,** | ) | |
| **and NURSE LINDASAY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have been deliberately indifferent to his medical needs relating to recurring severe pain and numbness in his arms and legs. Plaintiff is a long-term prisoner, now 54 years old, who is serving sentences of 60 and 15 years. This case is before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Plaintiff names four Defendants: Dr. Vipin K. Shah, Gina Allen (of the Administrative Review Board of the Illinois Department of Corrections – IDOC), Warden Hardy Marcous (of Stateville Correctional Center), and Nurse Lindasay (of Danville Correctional Center). He does not identify the institution where Defendant Dr. Shah is employed. In the complaint, Plaintiff states that the events giving rise to his claim occurred at Stateville in May 2011, and continued from September 2011-2012 (Doc. 1, pp. 4-5). It appears that Plaintiff prepared the instant complaint while he was housed at Danville, according to the address and date (May 9, 2015)

listed on the pleading (Doc. 1, pp. 2, 8).  However, he did not file it with this Court until August 13, 2015, by which time he had been transferred to Shawnee.

Plaintiff signed up for "countless" sick calls while he was incarcerated in Stateville, Western Illinois Correctional Center, Pinckneyville Correctional Center, and Danville Correctional Center.  He has nerve damage in his neck and back, and has had pain since 2006. He has muscle spasms and numbness in his legs and arms.   In May 2015, Defendant Lindasay denied him medical treatment, telling him he could not see the doctor until he had three sick calls (Doc. 1, p. 6).  Plaintiff requested a low bunk permit and to be sent to an outside hospital for evaluation, but these requests were denied.  He does not say who made those decisions.  He was given Tylenol and aspirin, which did not help him.  His symptoms interfere with his sleep, and some days he cannot get out of his bunk to go to the chow hall, gym, or yard.

There is no clear request for relief in the complaint, but Plaintiff appears to be seeking medical treatment of his condition (Doc. 1, pp. 7-8).

Plaintiff has included voluminous exhibits with his complaint (Docs. 1-1 and 1-2).  Much of this material dates back to 1993-1996, and many of the more recent documents seem to have only tangential connection to his claims.  However, some of the attachments include relevant facts.  In an undated letter from Plaintiff to Defendant Hardy Marcous, he states that he was in Stateville from 2006 to June 2011, and that during this time, Defendant Marcous denied Plaintiff's request to go to an outside hospital for treatment of his muscle spasms and nerve condition (Doc. 1-1, p. 1).  Defendant Shah likewise would not authorize a trip to an outside hospital, telling Plaintiff he was diabetic and should lose weight (Doc. 1-1, p. 2).

Plaintiff was transferred to Western on October 30, 2011, and remained there until September 12, 2012, when he was sent to Pinckneyville Correctional Center.  He was in Menard

from June 14, 2013, to November 12, 2014, when he was transferred to Danville (Doc. 1-1, p.3). He made sick call requests at Danville in April and May 2015 (Doc. 1-1, pp. 3-4, 6-7, 10, 50-58; Doc. 1-2, pp. 1-2).   He was transferred to Shawnee in July 2015, and made requests for medical treatment there as well (Doc. 1-1, pp. 9-11).   Even though he had made four sick call visits while at Danville, he was not referred to a doctor.   After his next transfer to Shawnee, he was again told (he does not say by whom) that no doctor referral would be made until he had three more sick call visits there (Doc. 1-1, p. 10).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."   *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).   An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The claim of entitlement to relief must cross "the line between possibility and plausibility."   *Id*. at 557.   Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.   *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the allegations in Plaintiff's complaint, the Court concludes that the pleading fails to state a claim upon which relief may be granted against any of the Defendants. In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's pain, muscle spasms, and numbness in his arms and legs indicate that he may have a serious medical condition.  However, his factual allegations do not support an inference that any Defendant was deliberately indifferent to his medical needs.  Plaintiff mentions only one Defendant (Lindasay) in his statement of claim, and says only that she explained that he had to see a nurse three times before a doctor referral would be made.  This instruction on the sick call policy does not suggest that she was deliberately indifferent to Plaintiff's condition.  No other Defendants are identified in the body of the complaint in connection with Plaintiff's other generalized allegations of inadequate or ineffective treatment.  Defendant Allen is not mentioned at all.

The material in Plaintiff's exhibits, which states that Defendants Marcous and Shah denied Plaintiff's requests to be sent to an outside hospital, could indicate deliberate indifference, depending on the severity of Plaintiff's condition and whether the denial was based on legitimate medical judgment.  *See Perez v. Fenoglio*, 792 F.3d 768, 777-79 (7th Cir. 2015).  However, Plaintiff's statement regarding Defendant Shah includes the doctor's recommended steps for Plaintiff to take to relieve his symptoms.  Plaintiff does not allege any facts to indicate that a visit to an outside specialist was medically necessary or appropriate for his condition, or that the denial of that request was unreasonable.

Furthermore, it appears that this lawsuit may have been brought in the wrong district. Defendants Marcous and Lindsey were employed at Stateville and Danville Correctional Centers, which are located in the Northern and Central Districts of Illinois, respectively. Defendant Allen is located in Springfield, also in the Central District.  Plaintiff does not disclose the location where he sought treatment from Defendant Shah, but the Court notes that Plaintiff

brought suit previously against Defendant Shah in the Central District of Illinois.[1]   Plaintiff has not included any Shawnee prison officials among the Defendants, thus there is nothing to connect his claims to the Southern District of Illinois.   There is one page sandwiched among Plaintiff's exhibits (Doc. 1-1, p. 5), which lists Plaintiff as a party and lists three other Defendants (David, Penkin Debbra, and Lura Fisher).   The first two have a work address at Shawnee Correctional Center.   However, Plaintiff did not include any allegations against these individuals, and did not include them in the caption of his complaint.   Therefore, the Court cannot conclude that he intended to sue these people, and has no factual allegations on which to evaluate any possible claims against them.

For the above reasons, Plaintiff's complaint (Doc. 1) shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.   However, Plaintiff shall be allowed an opportunity to submit an amended complaint, in order to correct the deficiencies in his pleading.   If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case may be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g).   The amended complaint shall be subject to review under § 1915A.

## Pending Motion

Plaintiff submitted a motion for recruitment of counsel (Doc. 2), in which he notes that he "wrote letters" in an attempt to find an attorney, but he has no money to hire one.   He further states that he has only a grade-school education, does not understand the law, and takes antidepressants and psychotropic drugs.   However, Plaintiff failed to sign the motion as required by Federal Rule of Civil Procedure 11 ("Every pleading, written motion, and other paper must be

---

[1] *See Garner v. Shah*, Case No. 12-cv-3318 (C.D. Ill.), in which Defendant Shah's answer stated that he had been employed at Western Illinois Correctional Center during Plaintiff's incarceration there (Doc. 20).

signed . . . by a party personally if the party is unrepresented.").

The Clerk is **DIRECTED** to **STRIKE** the motion for counsel (Doc. 2) for failure to comply with Rule 11.  Plaintiff may submit a properly signed motion for recruitment of counsel if he wishes the Court to consider his request.

**Disposition**

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 35 days of the entry of this order (on or before November 2, 2015).  It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions.  He should label the pleading "First Amended Complaint" and include Case Number 15-cv-900-SMY.  With respect to each allegation of wrongdoing, Plaintiff shall specify the Defendant(s) involved *by name*,[2] and describe the actions alleged to have been taken by each Defendant.  Plaintiff should clearly indicate the prison where each incident took place.  New individual Defendants may be added if they were personally involved in the constitutional violations.  Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, the First Amended Complaint must contain all the relevant allegations in support of

---

[2] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

Plaintiff's claims and must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint – however, Plaintiff should refrain from filing voluminous documents, and should include *only* material that is directly relevant to his claim(s).  Failure to file an amended complaint shall result in the dismissal of this action with prejudice.  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form, and a blank motion for recruitment of counsel.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED: September 28, 2015**

                                      s/ STACI M. YANDLE
                                      United States District Judge